FILED
JUL 31 2006
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**MICHAEL P. TATRO**
**(PLAINTIFF)**

**VS.**

**EDWARD CONWAY, JR.**
**CITY OF WARWICK TREASURER**
**WARWICK POLICE DEPARTMENT**
**CHIEF STEPHEN MCCARTNEY**
**JOHN DOE #1, JOHN DOE #2**
**JOHN DOE #3, JOHN DOE #4**
**JOHN DOE #5, JOHN DOE #6**

**C.A. No: 06-333ML**

**(Former CA NO K-06-527)**

**JURY TRAIL DEMANDED**

**PLAINTIFF MICHAEL P. TATRO'S OBJECTION TO DEFENDANTS, CITY OF WARWICK TREASURER, WARWICK POLICE DEPARTMENT AND CHIEF STEPHEN MCCARTNEY MOTION TO DISMISS IN LIEU OF AN ANSWER PURSUANT TO RULE 12(b)(6)**

**NOW COMES** the plaintiff, Michael P. Tatro, Pro-Se, in the above entitled matter and hereby objects to the Defendants, City Of Warwick Treasurer, Warwick Police Department And Chief Stephen McCartney ,Motion To Dismiss In Lieu Of An Answer Pursuant To Rule 12(B)(6) of the Federal Rules of Civil Procedure. He relies upon the attached memorandum in support here of.

Respectfully Submitted:

**Michael P. Tatro, Pro-Se.**
**P.O. Box 8249**
**Cranston, RI 02920**

**CERTIFICATION**

I hereby certify that I mailed a true copy of the with motion to counsel of record, Marc Desisto, Desisto Law, 211 Angel Street, Providence, RI 02903 on the 27th day of July 2006.

________________________

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**MICHAEL P. TATRO**
*(PLAINTIFF)*

**VS.**

**EDWARD CONWAY, JR.**
**CITY OF WARWICK TREASURER**
**WARWICK POLICE DEPARTMENT**
**CHIEF STEPHEN MCCARTNEY**
**JOHN DOE #1,JOHN DOE #2,**
**JOHN DOE #3, JOHN DOE #4**
**JOHN DOE #5, JOHN DOE #6**
(DEFENDANT'S)

**C.A. No: 06-333ML**

**(Former -CA NO K-06-527)**

**PLAINTIFF MICHAEL P. TATRO'S MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANTS, CITY OF WARWICK, WARWICK POLICE DEPARTMENT AND CHIEF STEPHEN MCCARTNEY'S MOTION TO DISMISS IN LIEU OF ANSWER PURSUANT TO RULE 12(b)(6)**

## I. NOTIFICATION OF SIMULTANEOUS FILING OF MOTION FOR LEAVE TO AMEND COMPLAINT.

For the purpose of the submission of this memorandum it is appropriate that the court's attention be brought to the fact that the Plaintiff has filed a motion for leave to amend his complaint under Federal Rule 15(A). The motion was prepared for filing in the Kent County Superior Court prior to the removal of this matter to the District Court by the instant defendants. [1] Do to the fact that he amended the complaint once before service of process and R. I. Super. R. Civ. P. 15(a) requires leave, after motion and notice, before additional amendments may be made, the plaintiff was required to wait until he received an answer to his complaint as served. In this case the answer came in

[1] A copy of the motion, memorandum and proposed amended complaint are attached hereto as exhibits A, B, and C Respectively.

the form of a motion to dismiss in lieu of an answer pursuant to Rule 12(b)(6), which was served upon the plaintiff together with the petition for removal.

## II. INTRODUCTION

This matter is before the court on the motion of the Defendants, City of Warwick Treasurer, Warwick Police Department and Chief Stephen McCartney, to dismiss the Plaintiff's complaint in lieu of an answer. Citing Federal Rule 12(b)(6) the defendants advance the argument that any claims the plaintiff may have once had are now time-barred by certain statute(s) of limitation governing personal injury actions.

The Plaintiff objects to the defendants' motion and asserts several theories under which (A) the cause of action in this case did not begin to accrue until March of 2005 or (B) the statute of limitations have not expired. (C) the statute of limitations did not begin because the plaintiff was of unsound mind.

He requests that this court deny the Defendants' motion and that an order enter forthwith directing them to file an answer in accordance with Rule 4.

## III. STANDARD OF REVIEW

The Plaintiff joins the defendants in their assertion that " when considering a motion to dismiss for failure to a state a claim pursuant to Rule 12(b)(6), a court 'should grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts'". ***Theta Prods vs. Zippo MFG. CO***., 81 F. Supp 2nd 346, 348 (D.R.I.), citing ***Roma Construction Co. vs. a Russo***, 96 F.3rd 566, 569 (1st Cir. 1996) and that " The court will accept Plaintiff's well-pleaded facts in the complaint as true and

construe those facts in light most favorable to the Plaintiff. {Defendants' Memorandum in Support of Motion to Dismiss @ P. 2}

## IV. SECTION III (A) OF DEFENDANTS' MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS PURSUANT TO RULE 12(b)(6).

The Defendants[2], through their attorneys, have asked this Court to shield them from liability and responsibility for their negligent conduct and the negligent and criminal conduct of one of their employees. [now retired Sergeant Edward R. Conway, Jr.]

The canopy under which shelter is sought is their assertion that:

> **"IN THE INSTANT CASE, PLAINTIFF'S §1983 AND STATE TORT CLAIMS ARE SUBJECT TO THE SAME THREE (3) STATUTE OF LIMITATIONS IN ACCORDANCE WITH 9-1-14(b)" {DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS @ P 4.}**

Defendants further assert that:

> **"FOR PERSONAL INJURIES IN Rhode Island, THE CAUSE OF ACTION ACCRUES AND THE STATUE OF LIMITATIONS BEGIN AT THE TIME OF INJURY" {DEFENDANTS MEMORANDUM IN SUPPORT @ P.4}"**

The Defendants, relying upon their argument that the statue of limitation begins at the time of injury, ask the Court to dismiss the Plaintiff's claims insofar as they appear, at least to the Defendants, to arise "almost fifteen (15) years to late". In so doing they suggest to the Court that the only time frame giving rise to the complaint in this matter is

[2] FOR THE PURPOSES OF THIS MOTION THE REFERENCE TO "DEFENDANTS" SHALL MEAN THE CITY OF WARWICK TREASURER, THE WARWICK POLICE DEPARTMENT AND CHIEF STEPHEN MCCARTNEY ONLY, UNLESS OTHERWISE SPECIFIED.

the period of 1978-1988, and that the Plaintiff's own declaration that he was born on September 15, 1970 is demonstrative of the fact that he was a minor at the time of the alleged injury.

Defendants then import the illusion that the only way that the plaintiff could have possibly recovered damages would have been through the minority tolling provision embodied in R.I.G.L.*§ 9-1-19*. They offer this 2006 version of the statute in support:

> **"IF ANY PERSON AT ANY TIME SUCH CAUSE OF ACTION SHALL ACCRUE TO HIM OR HER SHALL BE UNDER THE AGE OF EIGHTEEN (18) YEARS, OR OF UNSOUND MIND, OR BEYOND THE LIMITS OF THE UNITED STATES, THE PERSON MAY BRING THE CAUSE OF ACTION, WITHIN THE TIME LIMITED UNDER THIS CHAPTER, AFTER THE IMPEDIMENT IS REMOVED." {DEFENDANTS' MEMORANDUM IN SUPPORT @ P 5}**

*Next,* that since "in the instant case by his own admission the Plaintiff turned eighteen (18) years of age, the age of majority, on September 15, 1988, the same date the alleged events giving rise to his complaint ended, therefore, even under the minority tolling provision Plaintiff only had until September 15, 1991 to file his alleged tort claims against the [*INSTANT DEFENDANTS*]. Again, that time has lapsed and the Plaintiff's Tort claims *** are time barred." {Defendants' Memorandum in Support @ P5}

## V. <u>THE PLAINTIFF IS ENTITLED TO PROTECTION OF THE PRE-1988 VERSION OF R.I.G.L. § 9-1-19 AND NOT THE 2006 VERSION</u>

The complaint filed by the Plaintiff sounds in allegation of assaults, sexual assaults, kidnapping, intimidation of a witness, obstruction of Justice, failure to report the commission of a first degree sexual assault, extortion, false arrest, false imprisonment, intentional infliction of emotional harm, negligence, premise liability, breach of contract,

breach of fiduciary responsibility, and civil rights violations under 42 U.S.C. §1983 against Perpetrator Defendant Edward Conway, Jr. an agent of the Warwick Police Department and the City of Warwick.

This conduct is in fact alleged to have occurred between 1978 and 1988, as the Defendants point out. Although the Plaintiff has not alleged that the actual infliction of the injuries themselves are limited to proscribed time frame.

For the purposes of this section defendant will address only the issue raised by the defendants concerning the minority tolling provision of ***§9-1-19***.

Although a reading of the 2006 version would seem to work to serve the needs of the defendants more to their liking, the Plaintiff argues that he is entitled to protection of the earlier version of the statute.

Prior to July of 1988 R.I.G.L. ***§ 9-1-19*** was set forth in the following manner:

> **"IF ANY PERSON AT ANY TIME SUCH CAUSE OF ACTION SHALL ACCRUE TO HIM OR HER BE WITHIN THE AGE OF TWENTY ONE (21) YEARS, OR OF UNSOUND MIND, OR IMPRISONED, OR BEYOND THE LIMITS OF THE UNITED STATES, THE PERSON MAY BRING THE CAUSE OF ACTION, WITHIN THE TIME LIMITED UNDER THIS CHAPTER, AFTER SUCH IMPEDIMENT IS REMOVED."**

This version accords two substantially different levels of protection. First, it extends the age of majority to twenty-one (21) for actions arising prior to July of 1988. The Plaintiff submits that this particular version applies to him in light of the decision in **Roe vs. Gelineau,** 794 A. 2nd 476,481,482 (RI 2002).

Where the Plaintiff did not reach the age of twenty-one until September 15, 1991, applying the defendant's theory he would have had until September 15, 1994 to file his claims. Unless, of course, there were other tolling provisions applicable at that time.

The second level of protection allowed by the pre-July 1988 version of ***§9-1-19*** is the tolling of the accrual of actions where the plaintiff is incarcerated; until the point at which the impediment of incarceration is removed.

The plaintiff submits to this Court that he was incarcerated from 1990 until June of 1997 on K2-89-0185 and K2-93-0206C as well as other Rhode Island Superior Court Matters.[3]

Thus, under this Pre-1988 version of ***§9-1-19*** the defendant is entitled to the protection of two specific tolling provisions. First, the minority provision: Second, that of incarceration.

Here, where the plaintiff was imprisoned on his twenty-first birthday, September 15, 1991, any accrual triggered by his attaining majority was re-tolled until his release from the Adult Correctional Institution in June of 1997.

Therefore, even assuming the defendant's contention that the action of the plaintiff would have accrued at the time of the incident (which plaintiff vehemently argues is not correct with regard to this case) then he would have enjoyed tolling protection until June of 2000, not September of 1991 as suggested in Defendants' Memorandum.

[3] Copy of the plaintiff's institutional travel sheet for the Adult Correctional Institution is attached as exhibit D.

## VI. THE PLAINTIFF'S BREACH OF CONTRACT CLAIM IS NOT BARRED BY STATUTE AS SUGGESTED IN SECTION III (B) OF THE DEFENDANTS' MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS.

In section (B) of the Memorandum in support of the Motion to Dismiss the Defendants maintain, "any contract claim that the plaintiff may have against the defendants would likewise be time-barred in accordance with Rhode Island Law. Rhode Island Law requires that "[e]xcept as otherwise provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after." *R.I. Gen Laws § 9-1-13*." [Memorandum in support at P. 5-6.]

Based upon the argument set forth in section IV, the plaintiff argues that because he was entitled to protection of both the Minority and Incarceration tolling provision of the pre-1988 version of ***§ 9-1-19*** that in the event that the his action began to accrue at the time of injury (which he vehemently argues is not correct with regard to this case) then he would have been permitted to file a breach of contract action against the city until ten years after his release from custody in June of 1997, or in this case until June of the year 2007.

Therefore where this action was first docketed in the Superior Court for Kent County on June 7, 2006 he has satisfied the provisions of ***§9-1-13***.

The plaintiff's claims for breach of contract must be allowed to stand.

## VII. THE CAUSE OF ACTION IN THIS CASE DID NOT BEGIN TO ACCRUE UNTIL NOVEMBER OF 2004 WHEN THE PLAINTIFF WAS DIAGNOSED WITH DEPRESSION AND WITH POST TRAUMATIC STRESS SYNDROME AND MULTIPLE PERSONALITY DISORDER IN THE EARLY PART OF 2005.

As set forth in section (V) the plaintiff has made allegations of assaults, sexual assaults, kidnapping, intimidation of a witness, obstruction of Justice, failure to report the commission of a first degree sexual assault, extortion, false arrest, false imprisonment, intentional infliction of emotional harm, negligence, premise liability, breach of contract, breach of fiduciary responsibility, and civil rights violations under 42 U.S.C. § 1983 at the hands of Perpetrator Defendant Edward Conway, JR.

In Rhode Island a person may be held civilly liable for crimes and offenses by virtue of the language established in R.I.G.L. § 9-1-2. Specifically the statues states that:

> **"WHENEVER ANY PERSON SHALL SUFFER ANY INJURY TO HIS OR HER PERSON, REPUTATION, OR ESTATE BY REASON OF THE COMMISSION OF ANY CRIME OR OFFENSE, HE OR SHE MAY RECOVER HIS OR HER DAMAGES FOR THE INJURY IN A CIVIL ACTION AGAINST THE OFFENDER, AND IT SHALL NOT BE ANY DEFENSE TO SUCH ACTIONS THAT NO CRIMINAL COMPLAINT FOR THE CRIME OR THE OFFENSE HAS BEEN MADE***"** [4]

[4] Plaintiff has contacted the RI State Police.

The appropriate statute of limitation for causes of action brought under this section is that which is set out in § 9-1-14. ***Lyons, et al vs. Town of Scitutate, et al,*** 544, 1034, 1036. (RI 1989).

In this section the Plaintiff submits that the cause of action in his particular case did not accrue until he was diagnosed with Depression in the November of 2004 and Post Traumatic Stress Syndrome and Multiple Personality Disorder in the early part of 2005.

The rationale and basis for this theory is the time tested "Discovery Rule."

Article 1, Section 5, of the Rhode Island Constitution provides that "every person within this state ought to find certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person."

It goes without saying that the right to seek remedy for injury is restricted by statutes of limitation that are intended to "prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard for want of seasonable prosecution". ***Wilkinson v. Harrington,*** 104 R.I. 224 @ 236, 243 A 2nd 745, 752 (R.I. 1968). The Rhode Island Supreme Court has long recognized, however, that this purpose is not defeated by providing a "reasonable opportunity to become cognizant of an injury and its cause before the statute of limitations begins to run. ***Kelly v. Marcantonio***, 678 A.2nd 873 @ 884. (RI 1996) citing ***Anthony v. Abbot Laboratories***, 490 A. 2nd 43. (RI 1985). The [Supreme Court] has also rejected as a general rule that a cause of action accrues at the time of the injury, *Id.*

In this case the Plaintiff submits that a discovery rule with regard to the injuries caused by the negligent conduct of the defendant's and that of Perpetrator Defendant Edward Conway, JR's felonious conduct is appropriate. In ***Wilkinson***, *Supra,* the Court

adopted a discovery rule for medical malpractice claims reasoning that "[t] o construe the statute [of limitations] narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest it self for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights is palpably unjust.[5]

Later, in ***ANTHONY***, *Supra*, the discovery rule was applied to a product-liability claim when the Supreme Court weighed " The policy of eliminating the unexpected enforcement of stale claims with the opportunity of a person to have his day in court to vindicate those rights that have been violated but have remained undiscovered." The ***Anthony*** Court determined that drug companies would not be unduly prejudiced by the application of the discovery rule because "[I]t should be foreseeable to the drug companies that if they put a product on the market that has harmful consequences, its effects will take some time to manifest themselves. They should also be aware that there may be an additional period of time before the injured person learns that his injury was the result of wrongful conduct on the part of the manufacturer." 490 A. 2nd @ 47.

The Court further concluded that public policy would be served by the application of the discovery rule because it would encourage manufactures to be more thorough in their testing before a product is placed on the market." *Id* @ 48.

In this case the Plaintiff has alleged, among other things, that he has suffered injury do to the negligent actions of the City of Warwick, Warwick Police Department and Chief Stephen McCartney.

---

[5] In 1971, the General Assembly increased the limitations period prescribed by G.L. 1956 § 9-1-14 from two years to three years. P.L. 1971, ch. 200

With regard to the Defendants' argument that the cause of action began to accrue after plaintiff reached the age of majority, for the illegal conduct committed against his person as a minor, would require the plaintiff to have had a proverbial crystal ball that would have allowed him to see into the future in order to determine that the vicious acts of the Perpetrator Defendant Edward Conway and the instant defendants would have caused him psychological, and other life altering injuries. (Plaintiff raises this objection in addition to those raised *infra* and in no way submits to the theory of the defendant that the cause of action accrued at the time of injury.)

More recently in ***Naples vs. Acer America Corp***., 970 F.Supp. 89, (D.R.I. 1997), the District Court, Lagueux, Chief Judge, ruled that a discovery rule in a Repetitive Stress Injury case against a manufacturer of computer key boards would be adopted by the Rhode Island Supreme Court, where one was not already in place. In coming to that conclusion Chief Judge Lagueux reasoned that "Unlike the paradigm personal injury case, such as a slip and fall or an automobile accident it is not possible to pinpoint a precise "time of injury" and that the very nature of the injury is such that it occurs as a result of a prolonged and cumulative process- in essence, a keyboard user is allegedly injured each time he or she strikes the keyboard."

The ***Naples*** court pointed out that [W]hile the injury is on going the user will not realize that anything is wrong until the symptoms begin to manifest them self at a later date. Thus, even if the date of accrual was set at the latest possible "time of injury"- the last use of the keyboard- in some instances the three-year limitation period could expire before the plaintiff experiences any symptoms at all. i.e., before the plaintiff knows that he or she has been injured.

The Court further went on to identify three reasonable prongs whereby the Supreme Court would establish the accrual of a Repetitive Stress Injury Claim. (1) The date of the first onset of R.S.I symptoms; (2) the date a physician diagnosis the symptoms as R.S.I.; or (3) the date a plaintiff has knowledge, or reasonably should know, of the possible casual connection between R.S.I. and long term keyboard use. Stressing that option three was the "*VERY LATEST*" point at which the cause of action could accrue under the discovery rule possibilities in that case.

In the case at bar the Plaintiff was first diagnosed By Dr. David Denude, as suffering from major depression in November of 2004 after two suicide attempts in October of 2004. [6] When the diagnosis of depression was made the plaintiff was in custody at the Bristol County Jail on Charges of Larceny by check and Fugitive Charges from the state of Rhode Island. A short time later, in February of 2005 the plaintiff was diagnosed with Post Traumatic Stress Syndrome and Multiple Personality Disorder by and second prison psychiatrist, Dr. Sally Petits. Dr. Pettis made this diagnosis following several meetings with and evaluations of the plaintiff after he revealed, for the first time, the conduct of the Perpetrator Defendant Edward Conway and the City of Warwick. Dr. Petits also reaffirmed the diagnosis of depression at that time.

The plaintiff began a short period of therapy with Dr. Pettis and continued to be monitored by Dr. Denude for medication management.[7] In May of 2005 the plaintiff was transferred to the State of Rhode Island, Adult Correctional Institution on the aforementioned Fugitive Charges. Since his commitment to the ACI the plaintiff has

[6] Plaintiff was hospitalized on both occasions.

[7] Since the diagnosis of Depression, PTSD, and Multiple Personality Disorder, the plaintiff has taken anti-depressants and mood stabilizers. At one point he was also treated with the antipsychotic drug, Thorezen.

continued to be treated by a psychiatrist for medication management. Although, do to a lack of resources, and his status as a non-sentenced inmate, specialized counseling and therapeutic services have not been available.

Applying the Discovery Rule envisioned in both ***ANTHONY*** and ***WILKINSON*** the cause of action did not begin to accrue until the Plaintiff was first made aware that he suffered from Depression, PTSD and MPD. In this case in November of 2004 at the earliest and March of 2005 at the latest.

This theory is also consistent with the decision of the Rhode Island Supreme Court in ***Kouasian, et al. Vs. Davol INC.***, 687 A. 2nd 459. (RI 1997). In that case the court ruled that the statute of limitations began to accrue against the plaintiff on the day that she was diagnosed has having a form of lung cancer which she sought to attribute to the exposure to negligent emission of EtO, a gas, used at defendant Davol's plant which sat 300-400 yards from her Cranston home. Which was four years before she brought suit.

Kouasian argued that the statute did not begin to run until a physician notified her of the possible casual link between the exposure to the gas and her lung cancer.

Citing ***Ashey vs. Kupchan***, 618 A.2nd 1268,1270 (RI 1993) the court held that " A trial justice may as a question of law determine the applicable statute-of-limitations".

Also, " in this case [Kupchan] the trial justice correctly applied the three-year limitations period set forth in §9-1-14(b) and properly determined that the plaintiff's conduct did not satisfy the reasonable diligence standard. ***Dionne Vs. Baute***, 589 A. 2nd 833@ 835. (RI 1991).

In the matter before the court the Plaintiff has brought his claim well within the three-year period after which he was diagnosed as having the depression, MPD and PTSD; and the connection of those illnesses to the negligent actions of the defendants, which both occurred on the same day. It is also particularly noteworthy that the period of time between the plaintiff's revealing to his mental health care provider that he suffered abuse at the hands of the defendants and the time of the diagnosis is less than two months.

To not afford the defendant the benefit of the discovery rule would serve to deprive him of his rights under Article 1, Section 5, of the Rhode Island Constitution. And "[t]o construe the statute [of limitations] narrowly so as to preclude the plaintiff from obtaining a remedy simply because the wrong of which he was the victim did not manifest it self for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require Michael Tatro to have sought a remedy before he knew of his rights is palpably unjust.

Here, there is certainly a public policy interest in not allowing the perpetrator of horrible acts of violence and such an unconscionable abuse of authority and public trust to hide behind the fact that the destruction or ramifications of his actions do not present them self within a certain period of time.

If ever there was to be an appropriate application of the Discovery Rule, the Plaintiff's cause of action is it. Due to the actions of the instant defendants the plaintiff as been inflicted with serious mental illnesses which have contributed to the break up of his marriage, the loss of communication with his child and step child, imprisonment,

major depression and for all points and purposes has prevented the plaintiff from living a full and quality life that he is entitled to as a person.

The defendant's motion to dismiss on the grounds that the period of limitation set forth in R.I.G.L. §9-1-14(b) must be denied.

## VIII. <u>THE ACTIONS OF THE DEFENDANTS CONSTITUTE CONTINUING TORTS.</u>

In this section the Plaintiff advances the theory that the statute of limitations has not run out because certain actions of the defendants, both instant and Perpetrator Defendant Edward Conway, Jr., constitute continuing torts.

Among other very serious criminal allegations the plaintiff brings charges of Intimidation of A witness

### A. <u>R.I.G.L. 11-32-5- INTIMIDATION OF A WITNESS AND VICTIMS OF CRIMES:</u>

<u>(a) Any person who, by expressly or impliedly threatening to commit any unlawful act, maliciously and knowingly communicates with another person with the specific intent to intimidate a victim of a crime or a witness in any criminal proceedings with respect to that person's participation in any criminal proceeding shall be guilty of a misdemeanor and upon conviction, shall be fined not more that five hundred ($500), or imprisoned not more than one year, or both.</u>

<u>(b) Any person who, with the specific intent to intimidate a victim of a crime or a witness in any criminal proceeding with respect to that person's</u>

participation in any criminal proceeding, causes a physical injury to or damages property of any person or expressly threatens to cause physical injury to or damage to the property of any person, or with specific intent to intimidate, acts for pecuniary gain shall be guilty of a felony and upon conviction shall be fined note more than five thousand dollars ($5000), or imprison for not more than five (5) years or both.

(c) As used in this section, "Criminal Proceeding" Means the filing of a criminal complaint, any grand jury proceedings, any trial, or hearing conducted in any court relating to a criminal matter, any proceeding before the parole board or any official inquiry into an alleged criminal violation.

The plaintiff specifically alleges that Perpetrator Defendant Edward Conway did threaten him and did threaten the safety and freedom of his father, Paul E. Tatro. Specifically, defendant Conway while on duty and off, in uniform and out, and in possession of Warwick Police Department equipment didn't threaten to arrest both the Plaintiff and his father if the plaintiff did not submit to his demented sexual instructions; and defendant Conway while on duty and off, in uniform and out, and in possession of Warwick Police Department equipment didn't threaten to assault both the Plaintiff and his father if the plaintiff did not submit to his demented sexual instructions; And defendant Conway while on duty and off, in uniform and out, and in possession of Warwick Police Department equipment didn't threaten to kill both the plaintiff and his father if the plaintiff did not submit to his demented sexual instructions. This conduct is the very definition of that prohibited in R.I.G.L. § 11-32-5.

The plaintiff avers that by virtue of these threats, which he had every reason to believe the defendant would carry out, (all though that is not an essential element of the crime of Intimidation of a Witness, ***State v. Martini***, 460 A. 2nd 936(RI 1983)) he did not report the defendant's conduct to the authorities or anyone else until the allegations were revealed during his therapy sessions.

As such, the defendant's threats constituted a continuous tort and the statute of limitations would not begin to run until the Plaintiff first reported the incidents or he ceased to be in reasonable fear for his safety and freedom as well as that of his father. In this case the plaintiff remains in reasonable fear of the Perpetrator Defendant Edward Conway, Jr. and assets the accrual of the action based upon his diagnoses by the mental health care providers rather than the filing of the suit or reporting of the incidents.

The very nature of the fiduciary and contractual obligations owed to the Plaintiff by of each one of the Defendants is the protection of his person and rights as a person.

Where the defendants used the cloak of their authority and the weapons issued to by the City of Warwick to facilitate the threats, the act of intimidating the plaintiff served to toll the limitations of actions on all of the personal injury claims set forth in the complaint, not just the damages that were caused as a result of the violation of the Intimidation of a Witness Statute. § 11-32-5. The Defendants or their agents can not be allowed to ***INTIMIDATE*** their way to avoidance of liability or to prevent the filing of suits against them because they were successful in instilling enough fear to prevent the plaintiff from realizing or pursuing his rights under the law.

B. **R.I.G.L. §11-37-3.1DUTY TO REPORT SEXUAL ASSAULT**

Any person, other than the victim, who knows or has reason to know that a First degree sexual assault or attempted first degree sexual assault is taking place in his or her presence shall immediately notify the state police of the police department of the city or town in which the assault or attempted assault took place.

The defendant never reported the sexual assaults he committed against the person of the plaintiff. Plaintiff therefore avers that the conduct of the defendant, who had a statutory obligation to report the crime, first has a citizen subject to the General Laws of Rhode Island and second as a Sworn Police Officer, constitutes a continuing tort.

Under these two continuing tort theories the plaintiff submits that even to this day the cause of action as not begun to accrue with regards to damages he is entitled to collect under both R.I.G.L. § 9-1-2 and R.I.G.L. § 9-1-14(b).

## IX. THE ACCRUAL OF THE CAUSE OF ACTION WAS TOLLED FOR REASONS THAT THE PLAINTIFF WAS OF UNSOUND MIND.

In addition to protecting tort victims from accrual of actions during minority or while the victim is incarcerated R.I.G.L. ***§ 9-1-19*** also provides the means of tolling a statute of limitation when the victim is or was of unsound mind at the time the action may have otherwise began to accrue to him or her.

As set forth infra, the Pre-July 1988 legislative version of ***§ 9-1-19***, which applies to the plaintiff, reads as follows:

Prior to July of 1988 R.I.G.L. *§ 9-1-19* was set forth in the following manner:

> **"IF ANY PERSON AT ANY TIME SUCH CAUSE OF ACTION SHALL ACCRUE TO HIM OR HER BE WITHIN THE AGE OF TWENTY ONE (21) YEARS, OR OF *UNSOUND MIND*, OR IMPRISONED, OR BEYOND THE LIMITS OF THE UNITED STATES, THE PERSON MAY BRING THE CAUSE OF ACTION, WITHIN THE TIME LIMITED UNDER THIS CHAPTER, AFTER SUCH IMPEDIMENT IS REMOVED."**

Should this Honorable Court rule that the Plaintiff's action is not subject to the discovery rule then he would argue that there exists and question of fact as to at what point prior to the diagnosis of Depression, Post Traumatic Stress Disorder and Multiple Personality Disorder the Plaintiff was actually suffering from the effects of same so as to allow his condition to qualify as unsound mind. Especially whereas the very nature of Multiple Personality and Post Traumatic Stress disorders are such that they would render the plaintiff incapable of managing his day-to-day affairs.

## X. CONCLUSION

The plaintiff reasserts, " when considering a motion to dismiss for failure to a state a claim pursuant to Rule 12(b)(6), a court 'should grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts'". ***Theta Prods vs. Zippo MFG. CO***., 81 F. Supp 2nd 346, 348 (D.R.I.), citing ***Roma Construction Co. vs. a Russo***, 96 F.3rd 566, 569 (1st Cir. 1996) and that " The court will accept Plaintiff's well-pleaded facts in the complaint as true and construe those facts in light most favorable to the Plaintiff.

Here the plaintiff has provided the Court with several reasonable theories under which he may recover and as such the Defendant's motion should be denied.

Respectfully Submitted:

Michael P. Tatro, Pro-Se
P.O. Box 8249
Cranston, RI 02920

**CERTIFICATION**

I hereby certify that I mailed a true copy of the with motion to counsel of record, Marc Desisto, Desisto Law, 211 Angel Street, Providence, RI 02903 on the 27th day of July 2006.

Michael P. Tatro