**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**MICHAEL P. TATRO**
*(PLAINTIFF)*

**VS.**

**EDWARD CONWAY, JR.**
**CITY OF WARWICK TREASURER**
**WARWICK POLICE DEPARTMENT**
**CHIEF STEPHEN MCCARTNEY**
**JOHN DOE #1,JOHN DOE #2,**
**JOHN DOE #3, JOHN DOE #4**
**JOHN DOE #5, JOHN DOE #6**
*(DEFENDANT'S)*

**C.A. No: 06-333ML**

**(Former -CA NO K-06-527)**

**PLAINTIFF MICHAEL P. TATRO'S OBJECTION TO DEFENDANT EDWARD CONWAY'S MOTION TO DISMISS IN LIEU OF AN ANSWER IN ACCORDANCE WITH RULE 12(B)(6)**

NOW COMES the Plaintiff, Michael P. Tatro, Pro-Se, in the above-entitled matter and hereby objects to the defendant, Edward Conway's, Motion to Dismiss in Lieu of an answer pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As grounds the, Plaintiff states that the Statutes of Limitation applicable in this case were tolled upon one or more of the following legal theories:

1) The Discovery Rule;
2) The minority tolling provision of the pre-1988 version of R.I.G.L. §9-1-19;
3) The imprisonment tolling provision of the pre-1988 version of R.I.G.L. § 9-1-19;
4) The unsound mind tolling provision of the pre-1988 version of §9-1-19.
5) Continuing Tort Theory.

Plaintiff further relies on, A) his Memorandum in Support of his objection to the Motion of Defendants, City of Warwick Treasurer, Warwick Police Department, and Chief Stephen McCartney to Dismiss in Lieu of and answer, pursuant to Rule 12(b)(6)[1] and B) his Memorandum in Support of his Objection to the Motion of Defendant Edward Conway, to Dismiss in Lieu of an answer pursuant to Rule 12(b)(6),[2] as well as any reason that may arise at hearing.

RESPECTFULLY SUBMITTED:

**Michael P. Tatro, Pro-Se, 2006-09-07**
P.O. Box 8249
Cranston, RI 02920
ISC G 218 B

**CERTIFICATION**

I hereby certify that I mailed a true copy of the with motion to counsel of record for the defendants, Marc Desisto, Desisto Law, 211 Angel Street, Providence, RI 02903 on 2006-09-07.

[1] Attached hereto and made a part hereof as Exhibit 1
[2] Attached hereto and made a part hereof as Exhibit 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **MICHAEL P. TATRO**<br>*(PLAINTIFF)*<br><br>**VS.**<br><br>**EDWARD CONWAY, JR.**<br>**CITY OF WARWICK TREASURER**<br>**WARWICK POLICE DEPARTMENT**<br>**CHIEF STEPHEN MCCARTNEY**<br>**JOHN DOE #1,JOHN DOE #2,**<br>**JOHN DOE #3, JOHN DOE #4**<br>**JOHN DOE #5, JOHN DOE #6**<br>(DEFENDANT'S) | **C.A. No: 06-333ML**<br><br>**(Former -CA NO K-06-527)** |

**PLAINTIFF MICHAEL P. TATRO'S MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANT, EDWARD CONWAY'S MOTION TO DISMISS IN LIEU OF ANSWER PURSUANT TO RULE 12(b)(6)**

## I. INTRODUCTION

Defendants, City of Warwick Treasurer, Warwick Police Department and Chief Stephen McCartney, have previously moved to dismiss the Plaintiff's complaint in lieu of an answer. Defendant Conway has now filed a Motion Joining the City Defendants. [1]Citing Federal Rule 12(b)(6) the defendants advance the argument that any claims the plaintiff may have once had are now time-barred by certain statute(s) of limitation governing personal injury actions.

[1] The term "City Defendants" refers to any Defendant other than Perpetrator Defendant Edward Conway, Jr.

The Plaintiff's objections to the City defendants' motion to dismiss are set forth in ***Exhibit 1***. For the purposes of this Memorandum the Plaintiff will address only the issues relating to Perpetrator Defendant Edward Conway, Jr.

Perpetrator Defendant Edward Conway offers no additional arguments as to how the Plaintiff's complaint has failed to state a claim against him other than those that were made on behalf of the City Defendants.

Accordingly the Plaintiff asserts several theories under which (A) the cause of action in this case did not begin to accrue until March of 2005 or (B) the statutes of limitation have not expired. (C) The statutes of limitation did not begin because the plaintiff was of unsound mind.

He requests that this court deny the Defendants' motion and that, an order enter forthwith, directing Perpetrator Defendant Edward Conway Jr., to file an answer in accordance with Rule 4 of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

" When considering a motion to dismiss for failure to a state a claim pursuant to Rule 12(b)(6), a court 'should grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts'". ***Theta Prods vs. Zippo MFG. CO***., 81 F. Supp 2nd 346, 348 (D.R.I.), citing ***Roma Construction Co. vs. a Russo***, 96 F.3rd 566, 569 (1st Cir. 1996) and that " The court will accept Plaintiff's well-pleaded facts in the complaint as true and construe those facts in light most favorable to the Plaintiff. {Defendants' Memorandum in Support of Motion to Dismiss @ P. 2}

## III. SECTION III (A) OF DEFENDANTS' MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS PURSUANT TO RULE 12(b)(6).

The Defendant, Edward Conway, Jr., through his attorneys, has asked this Court to shield him from liability and responsibility for his criminal and negligent conduct.

The canopy under which shelter is sought is his assertion that:

> **"IN THE INSTANT CASE, PLAINTIFF'S §1983 AND STATE TORT CLAIMS ARE SUBJECT TO THE SAME THREE (3) STATUTE OF LIMITATIONS IN ACCORDANCE WITH 9-1-14(b)" {DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS @ P 4.}**

Defendant further assert that:

> **"FOR PERSONAL INJURIES IN Rhode Island, THE CAUSE OF ACTION ACCRUES AND THE STATUE OF LIMITATIONS BEGIN AT THE TIME OF INJURY" {DEFENDANTS MEMORANDUM IN SUPPORT @ P.4}"**

The Defendant, relying upon his argument that the statue of limitation begins at the time of injury, asks the Court to dismiss the Plaintiff's claims insofar as they appear, at least to the Defendant, to arise "almost fifteen (15) years to late". In so doing he suggests to the Court that the only time frame giving rise to the complaint in this matter is the period of 1978-1988, and that the Plaintiff's own declaration that he was born on September 15, 1970 is demonstrative of the fact that he was a minor at the time of the alleged injury.

The Defendant goes on to import the illusion that the only way that the plaintiff could possibly recover damages would have been through the minority tolling provision embodied in R.I.G.L.*§ 9-1-19*. He offers this 2006 version of the statute in support:

> **"IF ANY PERSON AT ANY TIME SUCH CAUSE OF ACTION SHALL ACCRUE TO HIM OR HER SHALL BE UNDER THE AGE OF EIGHTEEN (18) YEARS, OR OF UNSOUND MIND, OR BEYOND THE LIMITS OF THE UNITED STATES, THE PERSON MAY BRING THE CAUSE OF ACTION, WITHIN THE TIME LIMITED UNDER THIS CHAPTER, AFTER THE IMPEDIMENT IS REMOVED." {DEFENDANTS' MEMORANDUM IN SUPPORT @ P 5}**

*Next, that since "in the instant case by his own admission the Plaintiff turned eighteen (18) years of age, the age of majority, on September 15, 1988, the same date the alleged events giving rise to his complaint ended, therefore, even under the minority tolling provision Plaintiff only had until September 15, 1991 to file his alleged tort claims against the Perpetrator Defendant Edward Conway. "Again, that time has lapsed and the Plaintiff's Tort claims *** are time barred."* **{Defendants' Memorandum in Support @ P5}.**

The Plaintiff avers that the argument of the defendant with respect to the Minority Tolling Provision misses the mark because the 2006 version of R.I.G.L. 9-1-19 is not the version that applies to him.

## IV. THE PLAINTIFF IS ENTITLED TO PROTECTION OF THE PRE-1988 VERSION OF R.I.G.L. § 9-1-19 AND NOT THE 2006 VERSION.

The complaint in this matter sounds in allegations of violent armed assaults, violent armed sexual assaults, kidnapping and sexual assault of the plaintiff by a uniformed police officer, intimidation of a witness, obstruction of Justice, failure to

report the commission of a first degree sexual assault, extortion, false arrest, false imprisonment, intentional infliction of emotional harm, negligence, premise liability, breach of contract, breach of fiduciary responsibility, and civil rights violations under 42 U.S.C. §1983 against Perpetrator Defendant Edward Conway, Jr..

This conduct is in fact alleged to have occurred between 1978 and 1988, as the Defendant point out. [**Although**] the Plaintiff has not alleged that the actual infliction of the injuries themselves is limited to proscribed time frame.

For the purposes of this section the Plaintiff will address only the issue raised by Perpetrator Defendant Edward Conway concerning the minority tolling provision of ***§9-1-19***.

Although a reading of the 2006 version would seem to work to serve the needs of the defendant more to his liking, the Plaintiff argues that he is entitled to protection of the earlier version of the statute.

Prior to July of 1988 R.I.G.L. ***§ 9-1-19*** was set forth in the following manner:

> **"IF ANY PERSON AT ANY TIME SUCH CAUSE OF ACTION SHALL ACCRUE TO HIM OR HER BE WITHIN THE AGE OF TWENTY ONE (21) YEARS, OR OF UNSOUND MIND, OR IMPRISONED, OR BEYOND THE LIMITS OF THE UNITED STATES, THE PERSON MAY BRING THE CAUSE OF ACTION, WITHIN THE TIME LIMITED UNDER THIS CHAPTER, AFTER SUCH IMPEDIMENT IS REMOVED."**

This version accords two substantially different levels of protection. First, it extends the age of majority to twenty-one (21) for actions arising prior to July of 1988. The Plaintiff submits that this particular version applies to him in light of the decision in **Roe vs. Gelineau,** 794 A. 2nd 476,481,482 (RI 2002).

Where the Plaintiff did not reach the age of twenty-one until September 15, 1991, applying the defendant's theory he would have had until September 15, 1994 to file his claims. Unless, of course, there were other tolling provisions applicable at that time.

The second level of protection allowed by the pre-July 1988 version of ***§9-1-19*** is the tolling of the accrual of actions where the plaintiff is incarcerated, until the point at which the impediment of incarceration is removed.

The plaintiff submits to this Court that he was incarcerated from 1990 until June of 1997 on K2-89-0185 and K2-93-0206C as well as other Rhode Island Superior Court Matters.[2]

Thus, under this Pre-1988 version of ***§9-1-19*** the defendant is entitled to the protection of two specific tolling provisions. First, the minority provision: Second, that of incarceration.

Here, where the plaintiff was imprisoned on his twenty-first birthday, September 15, 1991, any accrual triggered by his attaining majority was re-tolled until his release from the Adult Correctional Institution in June of 1997.

Therefore, even assuming the defendant's contention that the action of the plaintiff would have accrued at the time of the incident (which plaintiff vehemently argues is not correct with regard to this case) then he would have enjoyed tolling protection until June of 2000, not September of 1991 as suggested in Defendants' Memorandum.

Hence, the Plaintiff submits that his age of majority should be set at twenty-one, in this case on September 15, 1991, and that his incarceration until June of 1997 would

[2] Copy of the plaintiff's institutional travel sheet for the Adult Correctional Institution is attached as exhibit 2.

further extend the date by which he would have been required to file his claims to June of 2000.

Expanding upon the topic of the minority tolling provision the Plaintiff points out that it is the Defendant who suggested in his Memorandum that the only protection foreseeable to the plaintiff would have been the minority tolling provision. [Defendant's Memorandum at page 5 of 7]. The defendants agreed that the plaintiff was entitled to the protection of the minority provision but that " *by his own admission, the plaintiff turned (18) years of age, the age of majority, on September 15, 1988, the sane date the alleged events giving rise to his complaint ended. See exhibit A, Paragraph 17. Therefore, even under the minority tolling provision, plaintiff had until September 15, 1991 to file his alleged tort claims against the defendant."*

Contrary to the argument put forth by the defendant in the document entitled

***"REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S CITY OF WARWICK TREASURER, WARWICK POLICE DEPARTMENT AND CHIEF STEPHEN MCCARTNEY, MOTION TO DISMISS IN LIEU OF ANSWER IN ACCORDANCE WITH RULE 12(B)(6)"***

at pages 2 of 9 and 3 of 9, the Plaintiff is not asserting the minority or tolling provision of § 9-1-19 flatly or as the sole means by which he advances his tolling arguments. Rather, he does so 1) to assert his rights to have his age of majority calculated under the pre-1988 version of the statute, where the defendant would have the court apply any necessary calculations based upon the 2006 version. 2) As a foundation and basis for other tolling provisions which also apply to him upon which his age and incarceration have a bearing.

## V. THE PLAINTIFF'S BREACH OF CONTRACT CLAIM IS NOT BARRED BY STATUTE AS SUGGESTED IN SECTION III (B) OF THE DEFENDANTS' MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS.

In section (B) of the Memorandum in support of the Motion to Dismiss the Defendant maintains, "Any contract claim that the plaintiff may have against the defendant would likewise be time-barred in accordance with Rhode Island Law. Rhode Island Law requires that "[e]xcept as otherwise provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after." *R.I. Gen Laws § 9-1-13*." [Memorandum in support at P. 5-6.]

Based upon the argument set forth in section IV, the plaintiff argues that because he was entitled to protection of both the Minority and Incarceration tolling provision of the pre-1988 version of ***§ 9-1-19*** that in the event that the his action began to accrue at the time of injury (which he vehemently argues is not correct with regard to this case) then he would have been permitted to file a breach of contract action against the defendant until ten years after his release from custody in June of 1997, or in this case until June of the year 2007.

Therefore where this action was first docketed in the Superior Court for Kent County on June 7, 2006 he has satisfied the provisions of ***§9-1-13***.

This issue relating to the claims of Breach of Contract is a fundamental example of why the Plaintiff advanced the arguments in section four with respect to the age of majority and the imprisonment provision. He submits that his claim is not "futile" as suggested by the Defendants in the Reply Memorandum, and that the claims for breach of contract must be allowed to stand.

## VI. THE CAUSE OF ACTION IN THIS CASE DID NOT BEGIN TO ACCRUE UNTIL NOVEMBER OF 2004 WHEN THE PLAINTIFF WAS DIAGNOSED WITH DEPRESSION AND WITH POST TRAUMATIC STRESS SYNDROME AND MULTIPLE PERSONALITY DISORDER IN THE EARLY PART OF 2005.

As set forth, *Supra*, the complaint in this matter sounds in allegations of violent armed assaults, violent armed sexual assaults, kidnapping and sexual assault of the plaintiff by a uniformed police officer, intimidation of a witness, obstruction of Justice, failure to report the commission of a first degree sexual assault, extortion, false arrest, false imprisonment, intentional infliction of emotional harm, negligence, premise liability, breach of contract, breach of fiduciary responsibility, and civil rights violations under 42 U.S.C. §1983 against Perpetrator Defendant Edward Conway, Jr..

In Rhode Island a person may be held civilly liable for crimes and offenses by virtue of the language established in R.I.G.L. § 9-1-2. Specifically the statues states that:

> **"WHENEVER ANY PERSON SHALL SUFFER ANY INJURY TO HIS OR HER PERSON, REPUTATION, OR ESTATE BY REASON OF THE COMMISSION OF ANY CRIME OR OFFENSE, HE OR SHE MAY RECOVER HIS OR HER DAMAGES FOR THE INJURY IN A CIVIL ACTION AGAINST THE OFFENDER, AND IT SHALL NOT BE ANY DEFENSE TO SUCH ACTIONS THAT NO CRIMINAL COMPLAINT FOR THE CRIME OR THE OFFENSE HAS BEEN MADE***"** [3]

The appropriate statute of limitation for causes of action brought under this section is that which is set out in § 9-1-14. ***Lyons, et al vs. Town of Scitutate, et al,*** 544, 1034, 1036. (RI 1989).

[3] Plaintiff has contacted the RI State Police.

In this section the Plaintiff submits that the cause of action in his particular case did not accrue until he was diagnosed with Depression in November of 2004 and Post Traumatic Stress Syndrome and Multiple Personality Disorder in the early part of 2005.

The rationale and basis for this theory is the time tested "Discovery Rule."

Article 1, Section 5, of the Rhode Island Constitution provides that "every person within this state ought to find certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person."

It goes without saying that the right to seek remedy for injury is restricted by statutes of limitation that are intended to "prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard for want of seasonable prosecution". ***Wilkinson v. Harrington,*** 104 R.I. 224 @ 236, 243 A 2nd 745, 752 (R.I. 1968). The Rhode Island Supreme Court has long recognized, however, that providing a "reasonable opportunity to become cognizant of an injury and its cause before the statute of limitations begins to run does not defeat this purpose ***Kelly v. Marcantonio***, 678 A.2d 873 @ 884. (RI 1996) citing ***Anthony v. Abbot Laboratories***, 490 A. 2nd 43. RI 1985). The [Supreme Court] has also rejected as a general rule that a cause of action accrues at the time of the injury, *Id.*

In this case the Plaintiff submits that a discovery rule with regard to the injuries caused by the negligent conduct of the Perpetrator Defendant Edward Conway, Jr.'s felonious conduct is appropriate. In ***Wilkinson***, *Supra,* the Court adopted a discovery rule for medical malpractice claims reasoning that "[t]o construe the statute [of limitations] narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest it self for at least two years from

the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights is palpably unjust.[4]

Later, in ***ANTHONY***, *Supra*, the discovery rule was applied to a product-liability claim when the Supreme Court weighed " The policy of eliminating the unexpected enforcement of stale claims with the opportunity of a person to have his day in court to vindicate those rights that have been violated but have remained undiscovered." The ***Anthony*** Court determined that drug companies would not be unduly prejudiced by the application of the discovery rule because "[I]t should be foreseeable to the drug companies that if they put a product on the market that has harmful consequences, its effects will take some time to manifest themselves. They should also be aware that there may be an additional period of time before the injured person learns that his injury was the result of wrongful conduct on the part of the manufacturer." 490 A. 2nd @ 47.

The Court further concluded that public policy would be served by the application of the discovery rule because it would encourage manufactures to be more thorough in their testing before a product is placed on the market." *Id* @ 48.

In this case the Plaintiff has alleged, among other things, that he has suffered grave injury do to the criminal and negligent actions Perpetrator Defendant Edward Conway, Jr.

With regard to the Defendants' argument that the cause of action began to accrue after plaintiff reached the age of majority, for the illegal conduct committed against his person as a minor, would require the plaintiff to have had a proverbial crystal ball that

---

[4] In 1971, the General Assembly increased the limitations period prescribed by G.L. 1956 § 9-1-14 from two years to three years. P.L. 1971, ch. 200

would have allowed him to see into the future in order to determine that the vicious acts of the Perpetrator Defendant Edward Conway would have caused him psychological, and other life altering injuries. (Plaintiff raises this objection in addition to those raised *infra* and in no way submits to the theory of the defendant that the cause of action accrued at the time of injury.)

More recently in ***Naples vs. Acer America Corp***., 970 F.Supp. 89, (D.R.I. 1997), the District Court, Lagueux, Chief Judge, ruled that a discovery rule in a Repetitive Stress Injury case against a manufacturer of computer key boards would be adopted by the Rhode Island Supreme Court, where one was not already in place. In coming to that conclusion Chief Judge Lagueux reasoned that "Unlike the paradigm personal injury case, such as a slip and fall or an automobile accident it is not possible to pinpoint a precise "time of injury" and that the very nature of the injury is such that it occurs as a result of a prolonged and cumulative process- in essence, a keyboard user is allegedly injured each time he or she strikes the keyboard."

The ***Naples*** court pointed out that [W]hile the injury is on going the user will not realize that anything is wrong until the symptoms begin to manifest them self at a later date. Thus, even if the date of accrual was set at the latest possible "time of injury"- the last use of the keyboard- in some instances the three-year limitation period could expire before the plaintiff experiences any symptoms at all. i.e., before the plaintiff knows that he or she has been injured.

The Court further went on to identify three reasonable prongs whereby the Supreme Court would establish the accrual of a Repetitive Stress Injury Claim. (1) The date of the first onset of R.S.I symptoms; (2) the date a physician diagnosis the symptoms

as R.S.I.; or (3) the date a plaintiff has knowledge, or reasonably should know, of the possible casual connection between R.S.I. and long term keyboard use. Stressing that option three was the "*VERY LATEST*" point at which the cause of action could accrue under the discovery rule possibilities in that case.

In the case at bar the Plaintiff was first diagnosed By Dr. David Denude, as suffering from major depression in November of 2004 after two suicide attempts in October of 2004. [5] When the diagnosis of depression was made the plaintiff was in custody at the Bristol County Jail on Charges of Larceny by check and Fugitive Charges from the state of Rhode Island. A short time later, in February of 2005 the plaintiff was diagnosed with Post Traumatic Stress Syndrome and Multiple Personality Disorder by a second prison psychiatrist, Dr. Sally Pettis. Dr. Pettis made this diagnosis following several meetings with and evaluations of the plaintiff after he revealed, for the first time, the conduct of the Perpetrator Defendant Edward Conway and the City of Warwick. Dr. Pettis also reaffirmed the diagnosis of depression at that time.

The plaintiff began a short period of therapy with Dr. Pettis and continued to be monitored by Dr. Denude for medication management.[6] In May of 2005 the plaintiff was transferred to the State of Rhode Island, Adult Correctional Institution on the aforementioned Fugitive Charges. Since his commitment to the ACI the plaintiff has continued to be treated by a psychiatrist for medication management. Although, do to a lack of resources, and his status as a non-sentenced inmate, specialized counseling and therapeutic services have not been available.

---

[5] Plaintiff was hospitalized on both occasions.

[6] Since the diagnosis of Depression, PTSD, and Multiple Personality Disorder, the plaintiff has taken anti-depressants and mood stabilizers. At one point he was also treated with the antipsychotic drug, Thorezen.

Applying the Discovery Rule envisioned in both ***ANTHONY*** and ***WILKINSON*** the cause of action did not begin to accrue until the Plaintiff was first made aware that he suffered from Depression, PTSD and MPD. In this case in November of 2004 at the earliest and March of 2005 at the latest.

This theory is also consistent with the decision of the Rhode Island Supreme Court in ***Kouasian, et al. Vs. Davol INC.***, 687 A. 2nd 459. (RI 1997). In that case the court ruled that the statute of limitations began to accrue against the plaintiff on the day that she was diagnosed has having a form of lung cancer which she sought to attribute to the exposure to negligent emission of EtO, a gas, used at defendant Davol's plant which sat 300-400 yards from her Cranston home. Which was four years before she brought suit.

Kouasian argued that the statute did not begin to run until a physician notified her of the possible casual link between the exposure to the gas and her lung cancer.

Citing ***Ashey vs. Kupchan***, 618 A.2nd 1268,1270 (RI 1993) the court held that " A trial justice may as a question of law determine the applicable statute-of-limitations".

Also, " in this case [Kupchan] the trial justice correctly applied the three-year limitations period set forth in §9-1-14(b) and properly determined that the plaintiff's conduct did not satisfy the reasonable diligence standard. ***Dionne Vs. Baute***, 589 A. 2nd 833@ 835. (RI 1991).

In the matter before the court the Plaintiff has brought his claim well within the three-year period after which he was diagnosed as having the depression, MPD and PTSD and the connection of those illnesses to the criminal and negligent actions of the defendant, which both occurred on the same day. It is also particularly noteworthy that

the period of time between the plaintiff's revealing to his mental health care provider that he suffered abuse at the hands of the defendant and the time of the diagnosis is less than two months.

To not afford the defendant the benefit of the discovery rule would serve to deprive him of his rights under Article 1, Section 5, of the Rhode Island Constitution. And "[t]o construe the statute [of limitations] narrowly so as to preclude the plaintiff from obtaining a remedy simply because the wrong of which he was the victim did not manifest it self for a period of years after the time the criminal and negligent conduct took place, is clearly inconsistent with the concept of fundamental justice. To require Michael Tatro to have sought a remedy before he knew of his rights is palpably unjust.

Here, there is certainly a public policy interest in not allowing the perpetrator of horrible acts of violence and such an unconscionable abuse of authority and public trust to hide behind the fact that the destruction or ramifications of his actions do not present them self within a certain period of time.

If ever there was to be an appropriate application of the Discovery Rule, the Plaintiff's cause of action is it. Due to the actions of Perpetrator Defendant Edward Conway, Jr., the plaintiff as been inflicted with serious mental illnesses which have contributed to the break up of his marriage, the loss of communication with his child and step child, imprisonment, major depression and for all points and purposes has prevented the plaintiff from living a full and quality life that he is entitled to as a person.

The defendant's motion to dismiss on the grounds that the period of limitation set forth in R.I.G.L. §9-1-14(b) must be denied.

## VII. THE ACTIONS OF THE DEFENDANT CONSTITUTE CONTINUING TORTS.

In this section the Plaintiff advances the theory that the statute of limitations has not run out because certain actions of the defendant constitute continuing crimes and thus, constitute continuing torts for which he entitled to collect damages pursuant to R.I.G.L. § 9-1-2.

Among other very serious criminal allegations the plaintiff brings charges of Intimidation of A witness

### A. R.I.G.L. 11-32-5- INTIMIDATION OF A WITNESS AND VICTIMS OF CRIMES:

(a) Any person who, by expressly or impliedly threatening to commit any unlawful act, maliciously and knowingly communicates with another person with the specific intent to intimidate a victim of a crime or a witness in any criminal proceedings with respect to that person's participation in any criminal proceeding shall be guilty of a misdemeanor and upon conviction, shall be fined not more that five hundred ($500), or imprisoned not more than one year, or both.

(b) Any person who, with the specific intent to intimidate a victim of a crime or a witness in any criminal proceeding with respect to that person's participation in any criminal proceeding, causes a physical injury to or damages property of any person or expressly threatens to cause physical injury to or damage to the property of any person, or with specific intent to intimidate, acts for pecuniary gain shall be guilty of a felony and upon conviction shall be fined note

more than five thousand dollars ($5000), or imprison for not more than five (5) years or both.

(c) As used in this section, "Criminal Proceeding" Means the filing of a criminal complaint, any grand jury proceedings, any trial, or hearing conducted in any court relating to a criminal matter, any proceeding before the parole board or any official inquiry into an alleged criminal violation.

The plaintiff specifically alleges that Perpetrator Defendant Edward Conway did threaten him and did threaten the safety and freedom of his father, Paul E. Tatro. Specifically, defendant Conway while on duty and off, in uniform and out, and in possession of Warwick Police Department equipment did threaten to arrest both the Plaintiff and his father if the plaintiff did not submit to his demented sexual instructions; and defendant Conway while on duty and off, in uniform and out, and in possession of Warwick Police Department equipment did threaten to assault both the Plaintiff and his father if the plaintiff did not submit to his demented sexual instructions; And defendant Conway while on duty and off, in uniform and out, and in possession of Warwick Police Department equipment did threaten to kill both the plaintiff and his father if the plaintiff did not submit to his demented sexual instructions. This conduct is the very definition of that prohibited in R.I.G.L. § 11-32-5.

The plaintiff avers that by virtue of these threats, which he had every reason to believe the defendant would carry out, (all though that is not an essential element of the crime of Intimidation of a Witness, ***State v. Martini***, 460 A. 2nd 936(RI 1983)) he did not report the defendant's conduct to the authorities or anyone else until the allegations were revealed during his therapy sessions.

As such, the defendant's threats constituted a continuous tort and the statute of limitations would not begin to run until the Plaintiff first reported the incidents or he ceased to be in reasonable fear for his safety and freedom as well as that of his father. In this case the plaintiff remains in reasonable fear of the Perpetrator Defendant Edward Conway, Jr. and asserts the accrual of the action based upon his diagnoses by the mental health care providers rather than the filing of the suit or reporting of the incidents.

The very nature of the fiduciary and contractual obligations owed to the Plaintiff by Perpetrator Defendant Edward Conway was the protection of his person and rights as a person.

Where the defendant used the cloak of his authority and the weapons issued to him by the City of Warwick to facilitate the threats, the act of intimidating the plaintiff served to toll the limitations of actions on all of the personal injury claims set forth in the complaint, not just the damages that were caused as a result of the violation of the Intimidation of a Witness Statute. § 11-32-5. The Defendant can not be allowed to ***INTIMIDATE*** his way to avoidance of liability or to prevent the filing of suits against him because he was successful in instilling enough fear to prevent the plaintiff from realizing or pursuing his rights under the law.

**B. R.I.G.L. §11-37-3.1DUTY TO REPORT SEXUAL ASSAULT**

Any person, other than the victim, who knows or has reason to know that a First degree sexual assault or attempted first degree sexual assault is taking place in his or her presence shall immediately notify the state police of the police department of the city or town in which the assault or attempted assault took place.

The defendant never reported the sexual assaults he committed against the person of the plaintiff. Plaintiff therefore avers that the conduct of the defendant, who had a statutory obligation to report the crime, first has a citizen subject to the General Laws of Rhode Island and second as a Sworn Police Officer, constitutes a continuing tort.

Under these two continuing tort theories the plaintiff submits that even to this day the cause of action has not begun to accrue with regards to damages he is entitled to collect under R.I.G.L. § 9-1-2.

## VIII. THE ACCRUAL OF THE CAUSE OF ACTION WAS TOLLED FOR REASONS THAT THE PLAINTIFF WAS OF UNSOUND MIND.

In addition to protecting tort victims from accrual of actions during minority or while the victim is incarcerated R.I.G.L. ***§ 9-1-19*** also provides the means of tolling a statute of limitation when the victim is or was of unsound mind at the time the action may have otherwise begun to accrue to him or her.

As set forth, ***Supra***, the Pre-July 1988 legislative version of ***§ 9-1-19***, which applies to the plaintiff, reads as follows:

> **"IF ANY PERSON AT ANY TIME SUCH CAUSE OF ACTION SHALL ACCRUE TO HIM OR HER BE WITHIN THE AGE OF TWENTY ONE (21) YEARS, OR OF *UNSOUND MIND*, OR IMPRISONED, OR BEYOND THE LIMITS OF THE UNITED STATES, THE PERSON MAY BRING THE CAUSE OF ACTION, WITHIN THE TIME LIMITED UNDER THIS CHAPTER, AFTER SUCH IMPEDIMENT IS REMOVED."**

Should this Honorable Court rule that the Plaintiff's action is not subject to the discovery rule then he would argue that there exists a question of fact as to at what point prior to the diagnosis of Depression, Post Traumatic Stress Disorder and Multiple Personality Disorder the Plaintiff was actually suffering from the effects of same so as to allow his condition to qualify as unsound mind. Especially whereas the very nature of Multiple Personality and Post Traumatic Stress disorders are such that they caused the repression of recollection of the incidents and/or rendered the plaintiff incapable of managing his day-to-day affairs and appreciating the wrong that was committed against his person and to "bring a specific claim." **Roe V. Gelineau**, 794 A.2nd 476 (RI1992).

## VIIII. THE PLAINTIFF'S CAUSE OF ACTION IS PROTECTED BY THE TOLLING PROVISIONS OF R.I.G.L. § 9-1-51, LIMITATIONS ON ACTIONS BASED ON SEXUAL ABUSE OR EXPLOITATION OF A CHILD.

Not withstanding all of the theories and arguments set forth, ***Supra***, the Plaintiff submits that the irrefutable graveman of Perpetrator Defendant Edward Conway, Jr.'s, argument that the Plaintiff's claims are time barred lies within the statutory language and purpose set out in R.I.G.L.§ 9-1-51 (1993) which reads in pertinent parts as follows:

> "(a) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced with seven (7) years of the act alleged to have cause the injury or condition, or seven (7) years of the time the victim discovered that the injury or condition was caused by said act, whichever period expires later."
>
> "(b) The victim need not establish which act in a series of continuing sexual abuse or exploitation incidents cause the

> injury complained of, but may compute the date of discovery from the date of the last act *by the same perpetrator* which is part of a common scheme of plan of sexual abuse of exploitation."
>
> "(e) As used in this section, 'childhood sexual abuse' means any act committed by *the defendant* against a complainant who was less than (18) years of age at the time of the act and which act would have been a criminal violation of Chapter 37 of title 11" (emphasis added)

***KELLY V. MARCANTONIO***, 678 A 2d. 873 @ 875-76 (RI 1996).

In the case at bar the plaintiff clearly brought his claim within seven (7) years of discovering the connection between the alleged acts and the injury or condition. More Specifically, the plaintiff has maintained that he first became aware of the connection between his diagnosis of Multiple Personality Disorder, Post Traumatic Stress Disorder, in March of 2005 and Major Depressive Disorder, in November of 2004, having filed the complaint in June of 2006.

The Plaintiff anticipates that the defendant will attempt to barricade himself from liability in light of the ruling of the Rhode Island Supreme Court in ***KELLY V. MARCANTONIO***, ***Supra***, where in it was held that Article 1, Section 2 in our State Constitution bars the retroactive application of 9-1-51 to claims already time barred by a statue of limitations in effect prior to the effective date of §9-1-51. In other words, § 9-1-51 could not be employed in order to revive claims already time barred.

It is here where the plaintiff again points to the highly relevant and necessary component of his objection raised in section VI, *Supra*, with regards to the application of the pre-1988 version of the 9-1-19 tolling statute.

Because §9-1-51 was not enacted by the Legislature until 1993, the plaintiff's claim must not have been time-barred before 1993.

Consequently, the provision extending his majority from age eighteen (18) to age twenty-one (21) sets the date of Plaintiff's ability to file a claim under 9-1-14(B), the only other provision available prior to the 1993 enactment of § 9-1-51, at three years from September 15, 1991. More Concretely, September 15, 1994.

In addition to the protection of the extended age of majority the Plaintiff also enjoyed the protection of the imprisonment provision of §9-1-19 which would have set the date by which he would have been required to file his claim at June of 2000, where he was incarnated until June of 1997.

Thus, when the Legislature enacted § 9-1-51 the plaintiff's claims would not have been time barred and he is entitled to the protection of the seven (7) year-discovery provision of the 1993 enactment.

## X. CONCLUSION

The plaintiff reasserts, "When considering a motion to dismiss for failure to a state a claim pursuant to Rule 12(b)(6), a court 'should grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts'". ***Theta Prods vs. Zippo MFG. CO.***, 81 F. Supp 2nd 346, 348 (D.R.I.), citing ***Roma Construction Co. vs. a Russo***, 96 F.3rd 566, 569 (1st Cir. 1996) and that " The court will accept Plaintiff's well-pleaded facts in the complaint as true and construe those facts in light most favorable to the Plaintiff.

Here the plaintiff has provided the Court with several reasonable theories under which he may recover and as such the Defendant's motion should be denied.

DATED: 9/11/06

Respectfully Submitted:

**Michael P. Tatro, Pro-Se**
P.O. Box 8249
Cranston, RI 02920

**CERTIFICATION**

I hereby certify that I mailed a true copy of the with motion to counsel of record, Marc Desisto, Desisto Law, 211 Angel Street, Providence, RI 02903 on the 7th day of September, 2006.

Michael P. Tatro